UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**CENTRAL DIVISION at LEXINGTON**

| | |
|---|---|
| TRACY RANEE LUSTER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. |
| v. ) | 5:14-CV-116-JMH |
| ) | |
| CAROLYN W. COLVIN, ACTING ) | **MEMORANDUM OPINION AND ORDER** |
| COMMISSIONER OF SOCIAL ) | |
| SECURITY, ) | |
| ) | |
| Defendant. ) | |

\*\*\*   \*\*\*   \*\*\*

This matter is before the Court upon cross-motions for summary judgment on Plaintiff's appeal of the Commissioner's denial of her application for disability income benefits (DIB) and supplemental security income (SSI).[1] The Court, having reviewed the record and considered the parties' arguments, finds that the decision of the Administrative Law Judge is supported by substantial evidence and, thus, the Court will grant Defendant's motion and deny Plaintiff's motion.

**I. Overview of the Process and the Instant Matter**

The Administrative Law Judge (ALJ), in determining disability, must conduct a five-step analysis:

> 1. An individual who is working and engaging in substantial gainful activity is not disabled, regardless of the claimant's medical condition.

---

[1] These are not traditional Rule 56 motions for summary judgment. Rather, it is a procedural device by which the parties bring the administrative record before the Court.

> 2. An individual who is working but does not have a "severe" impairment which significantly limits his physical or mental ability to do basic work activities is not disabled.
>
> 3. If an individual is not working and has a severe impairment which "meets the duration requirement and is listed in appendix 1 or is equal to a listed impairment(s)", then he is disabled regardless of other factors.
>
> 4. If a decision cannot be reached based on current work activity and medical facts alone, and the claimant has a severe impairment, then the Secretary reviews the claimant's residual functional capacity and the physical and mental demands of the claimant's previous work. If the claimant is able to continue to do this previous work, then he is not disabled.
>
> 5. If the claimant cannot do any work he did in the past because of a severe impairment, then the Secretary considers his residual functional capacity, age, education, and past work experience to see if he can do other work. If he cannot, the claimant is disabled.

*Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994) (citing 20 C.F.R. § 404.1520 (1982)). "The burden of proof is on the claimant throughout the first four steps of this process to prove that he is disabled." *Id.* "If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Secretary." *Id.*

The Plaintiff has not worked since 2008. The ALJ determined that she had severe impairments including: chronic neck pain following cervical vertebra fractures; degenerative

disc disease of the lumbar spine; hypertension; obesity; hyperglycemia; borderline intellectual functioning; reading disorder; mathematics learning disorder; posttraumatic stress disorder; panic disorder without agoraphobia; depressive disorder; and marijuana abuse, which was allegedly in remission. The ALJ determined, however, that none of the impairments met or medically equaled the severity of an impairment listed in Appendix 1. After considering the medical evidence, the ALJ found that Plaintiff is unable to perform any past relevant work, but retains the residual functional capacity to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b). The ALJ added, however, that Plaintiff could do no balancing or climbing; no more than occasional climbing of stairs or ramps, pushing, pulling, or overhead work with the upper extremities; no more than frequent turning of the head from side to side; and no exposure to concentrated vibration or industrial hazards. Additionally, the ALJ concluded that Plaintiff requires entry-level work with simple, repetitive procedures; no frequent changes in work routines; no requirement for detailed or complex problem solving, independent planning or setting of goals; and no fast-paced assembly lines or rigid production quotas. Finally, the ALJ determined that Plaintiff should work in an object-oriented environment with only

3

occasional and casual contact with coworkers, supervisors, or the general public. Based on the testimony of a vocational expert (VE), the ALJ determined that Plaintiff was capable of making a successful transition to other work that exists in significant numbers in the national economy and, therefore, was not disabled.

**II. Standard of Review**

In reviewing the ALJ's decision to deny disability benefits, the Court may "not try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted). Instead, judicial review of the ALJ's decision is limited to an inquiry into whether the ALJ's findings were supported by substantial evidence, 42 U.S.C. § 405(g); *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001) (citations omitted), and whether the ALJ employed the proper legal standards in reaching his conclusion. *See Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip*, 25 F.3d at 286 (citations omitted).

**III. Discussion**

At the time of the ALJ's decision, Plaintiff was forty-two-years old and had completed two years of technical college. Her previous work experience includes employment as a sales clerk, a nursing assistant, and as an assistant manager at McDonald's. Plaintiff claims that she became unable to work in April 2007 because of a "mental breakdown." Although the precise trigger for the breakdown is not known, Plaintiff reports that she experienced complications from abdominal surgery, and the psychological symptoms began around that time. She does not claim to have had any disabling physical conditions until May 8, 2009, when her trailer home was overturned during a tornado. From that time on, Plaintiff claims, she has suffered neck and arm pain and paresthesia, as well as low back and hip pain. The record reveals that Plaintiff sustained bilateral lamina fractures at the C6 level at the time of the tornado. Plaintiff claims that her depression and anxiety worsened significantly after the tornado, as well. She admitted significant, longstanding marijuana use up until May 2009.

Plaintiff's primary care provider is Jessica Pennington, M.D. The record indicates that Plaintiff saw Dr. Pennington on a regular basis beginning in December 2006. During that time, Dr. Pennington treated Plaintiff for anxiety, depression, back

pain, and other general health problems. Dr. Pennington referred Plaintiff for mental health counseling, which was provided by Joan Miller, a licensed professional clinical counselor. It appears that Plaintiff attended counseling sessions with Miller from October 2008 through June 2009. Miller worked with Plaintiff regarding stress and anxiety management techniques. Notably, one of the goals that Miller set for Plaintiff was to "continue looking for a job and doing what it takes to interview and submit applications."

At Dr. Pennington's order, Plaintiff underwent an MRI of the lumbar spine in April 2010, which revealed mild spondylosis and disc bulging without any evidence of disc herniation or stenosis. Plaintiff underwent an MRI of the cervical spine in December 2009. That study revealed disc bulging at C6-7, with no evidence of disc herniation or stenosis.

Dr. Pennington performed an evaluation for purposes of Plaintiff's disability claim in January 2010. Dr. Pennington listed Plaintiff's problems as: hypertension, history of cervical spine fractures, insomnia, depression, and anxiety. She opined that Plaintiff could lift only five pounds and that she could stand or walk only two hours out of an eight-hour workday. She opined that Plaintiff could sit only four hours out of an eight-hour workday. Additionally, she stated that

6

Plaintiff's ability to focus on tasks and to concentrate was affected by her impairments. Finally, she opined that Plaintiff's ability to deal with stresses at work was poor.

Geraldo Lima, PhD performed a psychological examination of Plaintiff for the state. Lima found that Plaintiff was able to understand simple instructions and had no difficulty recalling the information. He found that she was able to concentrate well and would likely be able to complete tasks in a normal amount of time. He determined, however, that she was socially withdrawn and unlikely to do well in social contexts and that her ability to cope with work stress was reduced. Christi Bruening, PhD performed a psychological consultation for the state and determined that Plaintiff could understand, remember, and carry out instructions; that she could concentrate for two hours at a time; that she could tolerate occasional contact with co-workers and supervisors in a non-public setting; and that she could adapt as needed in work settings involving routine adjustments.

P. Saranga, M.D. performed a physical consultative evaluation for the state. Dr. Saranga determined that Plaintiff could occasionally lift fifty pounds and frequently lift twenty-five pounds. He found that she could stand, walk, or sit about six hours in an eight-hour workday. Finally, he found that Plaintiff's ability to push and pull was unlimited.

Harwell Smith, PhD performed a psychological examination at the request of the state agency in January 2011. Dr. Smith estimated Plaintiff's global functioning score to be 50 and concluded that Plaintiff's ability to perform daily activities is good. He determined that her concentration is fair, and that her ability to interact socially with people at work and to adapt to the pressures of day-to-day work is poor. Cristi Hundley, PhD performed another psychological examination on behalf of the state in July 2011. Dr. Hundley determined that Plaintiff's ability to understand and remember simple instructions is fair to good and that her ability to maintain attention is fair to guarded. Hundley found that Plaintiff's ability to interact appropriately in a work setting is guarded to poor "given her description."

> **A. The ALJ did not err by failing to give sufficient reasons for rejecting Dr. Pennington's opinion regarding Plaintiff's physical limitations.**

An ALJ must give the opinion of a treating source controlling weight if the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is "not inconsistent with the other substantial evidence" in the record. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). Regardless of the weight assigned to a treating source opinion, an ALJ is required to

8

give good reasons for the weight given. 20 C.F.R. § 404.1527(d)(2). In giving little weight to Dr. Pennington's opinion regarding Plaintiff's physical limitations, the ALJ stated that the opinion "is not supported by objective findings." Dr. Pennington's treatment notes were not consistent with the severity of the impairments given in the disability evaluation. The ALJ noted that, despite Dr. Pennington's long treatment relationship with Plaintiff, she diagnosed only "lumbago" in March 2012. The ALJ went on to point out that Plaintiff's nondisplaced cervical fractures had healed within a few months of the 2009 tornado. Further, the MRI studies of Plaintiff's neck and low back revealed only mild degenerative changes of the spine.

To be sure, the ALJ could have provided a more thorough analysis using all the factors listed in the Social Security Regulations, *see Wilson*, 378 F.3d 541 at 544 (citing 20 C.F.R. § 404.1527(d)(2)). The Court is satisfied, however, that the ALJ explained why Dr. Pennington's opinion regarding Plaintiff's physical limitations was not "well-supported by medically acceptable clinical and laboratory techniques" and was "inconsistent with the other substantial evidence" in the record. *See id.*

9

> **B.  The hypothetical presented to the VE was consistent with Dr. Pennington's opinion of Plaintiff's psychological impairments and was supported by substantial evidence.**

With respect to Plaintiff's psychological impairments, Dr. Pennington opined that, due to Plaintiff's depression and anxiety, her ability to deal with work stress was poor. Having considered Dr. Pennington's opinion, along with those of the state examining and consulting sources, the ALJ determined that Plaintiff could perform entry-level work with simple, repetitive procedures, with no frequent changes in work routines and no requirement for detailed or complex problem solving, independent planning or setting of goals, and no fast-paced assembly lines or rigid production quotas. Additionally, the ALJ determined that the Plaintiff could work in an object-oriented environment with only occasional and casual contact with coworkers, supervisors, or the general public.

Like Dr. Pennington, the state's examining and consulting physicians determined that Plaintiff had a reduced ability to cope with work-related stress. The ALJ determined, however, that Plaintiff's claim of a complete inability to deal with stress was exaggerated. In support of his conclusion, he pointed out Plaintiff's past work, the fact that she was reportedly looking for work in late 2008, and was planning "holiday road trips." Further, he noted, Plaintiff's anger-

10

management issues appeared to be related to her relationship with an alcoholic boyfriend. And though Plaintiff reported being socially withdrawn, she reported having numerous friends with whom she talked and visited. The ALJ stated that the "opinions and treating and examining sources as to 'poor ability to deal with work stresses' ha[ve] been considered and [are] reflected in the limitation to entry level work with infrequent contact with coworkers and no frequent changes in work routines." While Plaintiff requested a hypothetical defining "poor" as "unacceptable" and "work stresses" as stress at even simple jobs, the ALJ declined, finding that these definitions were "extreme" and "not in accordance with the evidence."

Based on the Plaintiff's level of social function, as described above, the ALJ's did not err by rejecting the requested hypothetical. While Plaintiff's ability to handle stress is undoubtedly compromised, the ALJ's conclusion that she can tolerate some stress is supported by substantial evidence. The record supports that the hypothetical presented to the VE sufficiently captured Plaintiff's reduced ability to deal with stress and is, therefore, is not grounds for remand. *See Renfro v. Barnhart*, 30 F. App'x 431, 437 (6th Cir. 2002) (ALJ effectively limited hypothetical to "low stress" jobs by stipulating that available jobs involve only simple tasks that

are not fast-paced and do not require public contact or high levels of interaction with others.).

## IV. Conclusion

Based on the foregoing, **IT IS ORDERED:**

(1) that the Plaintiff's Motion for Summary Judgment, [DE 15], is **DENIED;**

(2) that the Commissioner's Motion for Summary Judgment, [DE 16], is **GRANTED;**

(3) and the Commissioner's decision in this matter is **AFFIRMED**.

This the 24th day of June, 2015.



Signed By:
*Joseph M. Hood*
Senior U.S. District Judge